

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

FJN:ADW/ADG                                    *271 Cadman Plaza East*
F. #2020R00468                                 *Brooklyn, New York 11201*

October 13, 2022

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Leslie Lescano, also known as "Kenny" and "Ken Ween"
            <u>Criminal Docket No. 19 CR 428 (S-2) (BMC)</u>

Dear Judge Cogan:

       The government respectfully submits this letter in advance of the sentencing hearing of the defendant Leslie Lescano, which is scheduled for October 20, 2022, at 4:45 p.m., and in response to the defendant's sentencing submission, dated October 6, 2022. (ECF No. 78) ("Def. Mem.")). On April 22, 2022, the defendant pleaded guilty before Magistrate Judge Ramon E. Reyes, Jr., pursuant to a plea agreement (the "Plea Agreement"), to one count of conspiring to distribute and possess with intent to distribute gamma-butyrolactone ("GBL"), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).[1]  <u>See</u> Presentence Investigation Report, prepared August 19, 2022 ("PSR") ¶¶ 1-2.  For the reasons set forth below, the government respectfully submits that a sentence of 60 months' imprisonment, which is an upward departure or variance from the applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of zero to six months' custody, is appropriate in this case.

---

[1] At the end of the plea hearing, Judge Reyes recommended that this Court accept the defendant's guilty plea. <u>See</u> Tr. of Apr. 22, 2022 Plea Hearing (ECF No. 67) ("Plea Hearing Tr.") at 27. The government respectfully requests that the Court accept the defendant's guilty plea.

I.      Background

    A.   Offense Conduct

As detailed below, the defendant conspired with co-defendant Angelina Barini, who was a sex worker, to use the so-called "date rape" drug GBL to incapacitate a client (the "August 18 Victim") in a motel room so that they could rob him.  The defendant reserved the motel room, hid in the bathroom until the August 18 Victim passed out, stole his credit card, and used it for a multiple-day shopping spree.  The 33-year-old victim never left the motel room, until his body was found several days later.  The defendant participated in this drug distribution scheme despite knowing that Barini had already killed at least one other person previously through similar conduct..

    i.   Co-Defendant Angelina Barini's Distribution of Narcotics

Over the course of about four weeks in the summer of 2019, Barini distributed lethal doses of drugs to several individuals.  Specifically, on July 4, 2019, Barini met with an individual in a motel room in Astoria, Queens (the "July 4 Victim").  See PSR ¶ 9.  Barini gave that person fentanyl, methamphetamine, and cocaine.  Id.  The Office of the Chief Medical Examiner of New York City ("OCME") concluded that the July 4 Victim's death was caused by acute intoxication due to the combined effects of fentanyl, methamphetamine, cocaine, and alcohol.  Id.

On July 11, 2019, just one week after her encounter with the July 4 Victim, Barini distributed fentanyl again.  This time, Barini gave the drugs to a person in a motel room in Elmhurst, New York (the "July 11 Victim"), who was later found dead on the same day at approximately 12:52 p.m.  Id. ¶ 7.  The OCME later determined that the July 11 Victim died from fentanyl intoxication.  Id.

A few weeks later, Barini again distributed narcotics that caused a person's death. Specifically, on August 5, 2019, Barini distributed fentanyl, methamphetamine, and cocaine to an individual at his home in Queens, New York (the "August 5 Victim").  Id. ¶ 8.  On that day, the New York City Police Department ("NYPD") found the August 5 Victim dead in his home in Queens following a neighbor's 911 call.  Id.  The OCME later determined that the August 5 Victim died from fentanyl, cocaine, and methamphetamine intoxication.  Id.

    ii.   Drug Distribution to the August 18 Victim

About two weeks later, Barini and the defendant agreed to drug the August 18 Victim, a soon-to-be client of Barini's.  This time, they surreptitiously mixed GBL in another drink, which was given to the August 18 Victim while in a Queens motel room.  As the August 18 Victim sipped the drink, the defendant hid in the bathroom.  On August 21, 2019, the police found and arrested Barini inside the room, where the August 18 Victim was also found dead with the body crudely hidden inside of a garbage can.  PSR ¶ 10.

The defendants' planning began at least five days earlier, on August 16, 2019, when Barini messaged the defendant on his Facebook account regarding a "business opportunity," telling

the defendant that Barini was "willing to pay for [the defendant's services]."  PSR ¶ 13; Ex. A.[2]
After the defendant agreed to participate in Barini's drug distribution scheme, Barini told the
defendant that she had gold, electronics, marijuana, methamphetamine, and GHB ["gamma-
hydroxybutyrate"] for sale.[3]  Id.  After the defendant offered to let Barini stay in the defendant's
motel room, the defendant indicated that he was on his way to Barini.  Id.  On the same date,
according to motel records, the defendant reserved the motel room in which the August 18 Victim
was later found dead.  Id. ¶ 12.

On August 18, 2019, at approximately 3:39 a.m., the defendant entered his reserved
room at the Queens motel.  Id. ¶ 12.  A few minutes later, at approximately 3:42 a.m., Barini exited
the same motel room.  Id.  At approximately 4:47 a.m., Barini sent a message to the defendant,
directing him to hide in the bathroom, minutes before Barini met with the August 18 Victim outside
of the motel.  Id. ¶ 14.  Barini and the August 18 Victim entered the motel room together, and the
defendant left the room about 15 minutes later.  Id.  Almost immediately after the defendant left
the room, he and Barini exchanged messages over Facebook regarding purchases to make using
the August 18 Victim's credit card.  Id. ¶ 15.  At approximately 6:00 a.m., the defendant used one
of the August 18 Victim's credit cards at a nearby store to purchase several items.  Id.  At
approximately 6:07 a.m. and 6:31 a.m., the defendant and Barini spoke by phone.  See Ex. A.  The
defendant later returned to the motel to leave the items on a bench for Barini to retrieve, which she
eventually did.  PSR ¶ 16.  The defendant left the area, and at about 7:45 a.m., Barini messaged
the defendant, demanding that he "stop playing [her]" and return to the motel with blankets and
sheets.  Id.; Ex. A.

A few hours later, at approximately 1:30 p.m., Barini left the motel and went into
an alleyway to retrieve a garbage can and then reentered the room.  PSR ¶ 17.  Over the next few
days, multiple people entered and exited the motel room.  Id.  However, the August 18 Victim did
not leave the room in the three days before his body was found.  Id.  During that time, Barini
sought help from others to dispose of the August 18 Victim's body, including asking the defendant
for a hand truck.  See PSR ¶ 18; Ex. A.  Indeed, on August 19, 2019, at approximately 12:20 a.m.,
the defendant and Barini again spoke on the phone.  See Ex. A.  On August 19, 2019, at
approximately 2:46 a.m., the defendant messaged Barini asking if she "still need[ed] [a]
hand[]truck."  Id.

On August 21, 2019, NYPD officers arrived at the Queens motel where Barini was
staying and knocked on the door of her room.  PSR ¶ 10.  Barini opened the door and then quickly
shut it upon seeing the police.  See id.  Shortly after, Barini re-opened the door, and officers smelled
a strong odor consistent with the smell of a dead body and burning incense.  Id.  Barini
spontaneously stated that she did not kill the August 18 Victim and that her pimp made her do it.

_____

[2] Ex. A, which is attached, is a redacted selection of Facebook communications between
the defendant and Barini between August 12 and August 21, 2019.

[3] As described in the PSR, Barini used shorthand to refer to the drugs, describing
methamphetamine as "T" and GHB as "G."  GBL converts into GHB when ingested by humans.
PSR ¶ 20.

Id.  In the corner of the room, the police found the August 18 Victim's body wrapped in bed linens and inside of a garbage can.  Id.

The OCME concluded that the August 18 Victim, who was 33 years' old, died from intoxication due to GHB,[4] cocaine, and alcohol.  Id.  Investigators later recovered from the motel room a glass with liquid GBL,[5] glass pipes commonly used for smoking narcotics, bottles of bleach and bleach-covered towels, electronics, a power saw, and an empty suitcase.  Id. ¶ 20.

After she was arrested, Barini admitted that she had met the August 18 Victim on August 18, 2019 at the motel, based on an agreement to exchange money for sex.  PSR ¶ 19. Barini also stated that the August 18 Victim did not wake up and had been bleeding from the nose and mouth.  Id.  Barini blamed the defendant, claiming that the defendant had given the August 18 Victim "liquid ecstasy"–i.e., GHB.  Id.  In addition, Barini admitted that she had helped to wrap the August 18 Victim's body and place it in a garbage can, and that other men associated with the defendant had come to the motel room to discuss disposing of the body. Id.  Eventually, Barini admitted that she sometimes gave clients drugs.  Id.

### iii.   The Defendant's Spending Spree, Interview, and Arrest

Between August 18 and August 24, 2019, the defendant continued to use the August 18 Victim's bank card at various locations.  See Addendum to the Presentence Investigation Report, dated October 7, 2022 ("PSR Add.") ¶¶ 14-22.  For example, on August 18, 2019, the defendant used the August 18 Victim's personal information to wire approximately $224.99 from the victim's financial account to another individual.  Id.  On August 21, 2019, the defendant and others used the bank card at a casino in Queens, New York.  Id.  And on or about August 24, 2019, the defendant transferred more than $500 from the August 18 Victim's account to another individual.  Id.

Law enforcement interviewed the defendant on August 25, 2019.  Id. ¶ 22.  The defendant stated that Barini was his ex-girlfriend, that he drove her to the Queens motel, and that he paid for a room for Barini to use for prostitution.  Id.  The defendant also admitted that he hid in the bathroom of the motel room when Barini and the August 18 Victim entered the room.  Id. According to the defendant, the August 18 Victim passed out shortly thereafter.  Id.  The defendant said he believed that Barini had given the August 18 Victim something to drink that would make him pass out because she had done that before to other men.  Id.  Indeed, the defendant explained that he had heard that Barini made a living by giving drugs to men without their knowledge to cause them to fall asleep so she could rob them, and that one man had died on such an occasion because Barini had given him "fake cocaine."  Id.  The defendant stated that Barini had told him that she uses "liquid G" to make men fall asleep.  Id.  Moreover, the defendant admitted that Barini had given him the August 18 Victim's bank card and that he used it at a store in Queens.  Id.

---

[4] GHB and GBL are commonly referred to as the "date-rape drug."  PSR ¶ 20.

[5] GBL converts into GHB when ingested by humans.  PSR ¶ 20.

B.  Procedural History

On February 17, 2021, the grand jury charged the defendant in a second Superseding Indictment with two counts.  See Second Superseding Indict. (ECF No. 27).  On April 22, 2022, the defendant pled guilty pursuant to the Plea Agreement to Count Four of the second Superseding Indictment.  PSR ¶ 1.  Count Four charged the defendant and Barini with conspiring to distribute GBL between August 16 and August 18, 2019, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 841(b)(1)(C).  See id. ¶ 2.

C.  Immigration and Criminal History

The defendant is a citizen of the Philippines and unlawfully in the United States. PSR ¶¶ 47, 56.  Prior to the instant offense, the defendant had no known prior criminal history.

II.  Sentencing Guidelines

The PSR's calculations are as follows:

| | |
|---|---|
| Base Offense Level (§§ 2D1.1(a)(5); 2D1.1(c)(17)) | 6 |
| Less:  Acceptance of Responsibility (§ 3E1.1) | -2 |
| Total Offense Level: | 4 |

The PSR calculated a total offense level of 4.  PSR ¶¶ 29-38.  The PSR also calculated that the defendant has a Criminal History Category of I.  Id. ¶¶ 39-42.  As a result of these calculations, the PSR calculated a Guidelines custody range of zero to six months' imprisonment.  Id. ¶ 80.

III.  A Sentence of 60 Months' Imprisonment Is Appropriate

A.  Legal Standard

The standards governing sentencing are well-established.  In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision.  Id. at 264; see also United States v. Kimbrough, 552 U.S. 85 (2007).

Although the Guidelines are no longer mandatory, they continue to play a critical role in trying to achieve the "basic aim" that Congress sought to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways."  Booker, 543 U.S. at 252; see also United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that Booker/Fanfan and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge.").  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial

5

benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "anchor[s]" the district court's discretion. Molina-Martinez v. United States, 136 S. Ct. 1338, 1345-46 (2016) (internal quotation marks omitted).

       After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the public from further crimes by the defendant; and d) the need for rehabilitation." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) further directs the Court "in determining the particular sentence to impose" to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

       In light of Booker, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. See Crosby, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." Id. at 112; see also United States v. Corsey, 723 F.3d 366, 375 (2d Cir. 2013) ("Even in cases where courts depart or impose a non-Guidelines sentence, the Guidelines range sets an important benchmark against which to measure an appropriate sentence."). Second, the Court must consider whether a departure from that Guidelines range is appropriate. See Crosby, 397 F.3d at 112. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. Id. at 113.

       According to 18 U.S.C. § 3553(b), a variance from the Sentencing Guidelines is warranted in the following situation:

> [If] the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

Koon v. United States, 518 U.S. 81, 92 (1996).

       In order to determine if an aggravating circumstance exists which was not taken into consideration in formulating an applicable guideline, it is necessary to turn to the Sentencing Guidelines and its underlying policies. As noted by the Supreme Court in Koon, the Sentencing Guidelines reflect the Sentencing Commission's intent to cover the typical cases in each criminal

category, but to allow district courts to depart from an applicable guideline range in unusual cases. Id. at 93. This principle is set forth in the Sentencing Guidelines as follows:

> The [Sentencing] Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' set of typical cases embodying the conduct that each guideline describes. When the court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G., Ch. 1, Pt. A, Intro. Comment 4(b).

Pursuant to U.S.S.G. § 5K2.1, the Court may upwardly depart from the authorized Guidelines range when loss of life occurs.  In determining the degree of upward departure, the sentencing judge should consider factors to include "the defendant's state of mind and the degree of planning or preparation . . . the means by which life was taken . . . the dangerousness of the defendant's conduct, the extent to which death or serious injury was intended or knowingly risked, and the extent to which the offense level for the offense of conviction . . . already reflects the risk of personal injury."  U.S.S.G. § 5K2.1.

B.  Section 3553(a) Factors and the Need for an Upward Departure or Variance

The government respectfully submits that the Court should upwardly depart from the applicable Guidelines range pursuant to U.S.S.G. § 5K2.1 and impose a sentence of 60 months' imprisonment, which would be sufficient, but certainly not greater than necessary, to achieve the goals of sentencing.  In the alternative, the government respectfully submits that the Court should vary upward pursuant to 18 U.S.S.C. § 3553(b) because there exists aggravating circumstances not adequately reflected in the applicable Guidelines range here.

i.  The Nature and Circumstances of the Offense

The nature and circumstances of the offense, which involved a person's death, are extraordinarily serious and justify a sentence of 60 months' imprisonment.  See 18 U.S.C. § 3553(a)(1); U.S.S.G. § 5K2.1.  The nature of the offense, conspiring to distribute GBL (a drug known primarily for use in raping people) is serious in itself.  Where, as here, the conspiracy succeeds, the nature of the crime is much graver.  The August 18 Victim is dead, and his family will suffer that loss for the rest of their lives.

The circumstances of the offense, which involved a victim's death, support an upward departure under U.S.S.G. § 5K2.1 because a Guidelines range of zero to six months does not account for the egregiousness of the defendant's conduct.  The defendant knowingly conspired with Barini to distribute GBL to incapacitate the August 18 Victim so that they could rob him of petty belongings.  Indeed, the defendant's participation was crucial in the scheme, as Barini was out of money and needed a place to stay.  That is why Barini offered the defendant a "business opportunity."  In turn, the defendant rented a motel room that Barini could use.  Barini did her part in the scheme, bringing an unwitting client to the motel room arranged for by the defendant, but

not before tipping off the defendant that they were on their way up to the room.  The defendant hid in the bathroom because he knew it would not be long before the drugs took their effect.  Sure enough, within 15 minutes, the victim was unconscious, and the defendant stripped him of at least one credit card.  While Barini waited with the victim, the defendant went on a spending binge with the victim's credit card, which was the objective of the scheme.  Some of the spending was for Barini's benefit, as the defendant left some items for her on a bench outside the motel.  But the rest was for the defendant himself.  The defendant used the credit card to make multiple purchases and money transfers.

The defendant agrees with all these facts, but absurdly and troublingly refuses to draw the obvious implications stemming from them.  For example, he states that  he did not plan "to drug and rob the victim in this case, let alone kill him." Def. Mem. at 4.  The defendant  persists that although he conspired with Barini to distribute GBL, "he did not know who would use it, when it would be used, or specifically that it would be used to incapacitate another person."  Id. Astonishingly, despite agreeing with all the facts laid out above, the defendant even states that he "was not present when the drugs were used." Id. at 5.  Based on the undisputed facts described above, the defendant's claims are utterly implausible and preposterous.

Obviously, the only reason why the defendant would have been in the motel bathroom was because he knew Barini planned to drug the August 18 Victim specifically, such that he could take the victim's belongings as soon as he was unconscious.  That sequence of events was the "business opportunity," and the defendant took full advantage of it.  The undisputed facts also show that the defendant was not merely reckless, but that he knew full well the point of giving GBL to another person.  As the defendant admitted during his August 25, 2019 law enforcement interview, he carried out this plan with Barini despite knowing that Barini had previously given "fake cocaine" to another victim under similar circumstances, causing that person's death, and knowing that Barini had a practice of drugging victims.  Therefore, regardless of whether the defendant intended to kill the August 18 Victim, his conduct showed wanton disregard for human life.  The assertion that the defendant did not know that agreeing to distribute a "date-rape drug" with a person he knew used such drugs to incapacitate and rob clients was meant to incapacitate and rob the client in the instant case, is as ludicrous as it sounds.

The defendant also now claims that he was "unaware that the victim had died until he was questioned by law enforcement several days later."  Def. Mem. at 10.  This also beggars belief.  As the communications in Exhibit A show, the defendant and Barini spoke on the phone multiple times shortly after the defendant left the motel and while Barini was searching desperately for help to dispose of the victim's body.  Indeed, on August 18, 2019, at approximately 6:31 a.m., the defendant and Barini spoke on the phone.  And about an hour later, at 7:45 a.m. and after the defendant had fled the area, Barini demanded that the defendant "stop playing [her]" and come back with sheets and blankets.  It is clear that by this point, Barini had told the defendant about the August 18 Victim's death and wanted him to help dispose of the body, and the defendant wanted nothing to do with the situation.  Of course, that did not stop the defendant from continuing to spend the dead victim's money.

On August 19, 2019, at about 12:20 a.m., the defendant and Barini spoke again. About two hours later, the defendant asked Barini if she still needed a hand truck.  Those

communications occurred almost a full day after the August 18 Victim died. Given Barini's panicked attempts to dispose of the August 18 Victim's body and her request for a hand truck, the only reasonable conclusion is that she informed the defendant that the August 18 Victim had died soon after the fact.

The defendant's recklessness, his role in planning the offense, the dangerousness of the conduct and the extent to which the offense level already reflects the risk of personal injury (which in this case is not at all) all weigh heavily in favor of a significant upward departure pursuant to U.S.S.G. § 5K2.1.

Based on the factors described in U.S.S.G. § 5K2.1, a significant upward departure from the Guidelines range and a sentence of 60 months' incarceration is warranted here. In the alternative, because the applicable Guidelines do not adequately reflect the aggravating circumstances of this offense, a significant upward variance and a sentence of 60 months' incarceration is warranted.

## ii.  The History and Characteristics of the Defendant

The history and characteristics of the defendant do not warrant a custodial sentence below 60 months' imprisonment. Unlike his co-defendant and many others similarly situated who turn to criminal activity to make a profit, the defendant did not appear to have a challenging childhood, an unsupportive family, or lack of useful skills. See PSR ¶¶ 47-51. The defendant, while unlawfully in the United States, turned to criminal activity to make what he believed was easy money.

The government recognizes that the defendant has a serious heart condition that requires ongoing care. See PSR ¶¶ 58-59. The defendant's medical conditions can be managed through the Bureau of Prisons, including through potential placement of the defendant at a Federal Medical Center. However, the need for medical treatment does not mitigate the defendant's egregious conduct or the need for a serious sentence.

## iii.  Deterrence

A 60-month sentence would support the goal of general deterrence. See 18 U.S.C. § 3553(a)(2). Sadly, drugging and robbing victims is not a unique phenomenon.[6] The government's recommended sentence would send a powerful message that the reckless distribution

_____

[6] For instance, in February 2022, one news outlet reported the story of a man who was drugged and robbed of over $10,000. See "Man claims he was drugged, robbed after night out in downtown Austin," CBS Austin, available at: https://cbsaustin.com/news/local/man-claims-he-was-drugged-robbed-after-night-out-in-downtown-austin. Similarly, in July 2022, another outlet reported the story of a man in Florida who was drugged and robbed of more than $50,000 in belongings. See "Fort Lauderdale Man Says Woman Drugged Him Before $50K Robbery," NBC Miami, available at: https://www.nbcmiami.com/news/local/fort-lauderdale-man-says-woman-drugged-him-before-50k-robbery/2804398/. In the latter story, the victim was found to have GHB in his system.

of potentially fatal drugs, whether to facilitate petty robbery or otherwise, may result in a significant jail sentence.

IV.    Restitution

      The government respectfully requests that the Court order that the defendant pay restitution, jointly and severally with the co-defendant Barini, in the amount of $22,124 to the family of the August 18, Victim.  The amount represents the funeral costs incurred by the family. See PSR ¶ 90; 18 U.S.C. §§ 3663(a)(1)(A), 3663(b)(3).

V.    Conclusion

      For the foregoing reasons, the government respectfully requests that the Court impose a sentence of 60 months' imprisonment.

      Respectfully submitted,

      BREON PEACE
      United States Attorney

By:    /s/ Andrew D. Wang
      Andrew D. Grubin
      Andrew D. Wang
      Assistant U.S. Attorneys
      (718) 254-7000

cc:    Clerk of the Court (BMC) (by ECF and Email)
      Jeremy Schneider, Esq. (by ECF and Email)
      Erica Vest, United States Probation Officer (by Email)

# EXHIBIT A




Photo Id: 396449203832519

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-12 04:06:57 UTC
  **Body** Hi baby

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 18:47:57 UTC
  **Body** Hi sweety!

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-16 19:14:06 UTC
  **Body** Hey ther

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-16 19:14:42 UTC
  **Body** I got a biznes opratunady for ya

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-16 19:15:35 UTC
  **Body** I cute to the chase then i am willing to pay for ur servces

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 19:15:49 UTC
  **Body** Okay

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-16 19:15:51 UTC
  **Body** Are u with it

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 19:16:13 UTC
  **Body** Yes my queen

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-16 19:16:45 UTC
  **Body** Cool i am at the metro hotel they got mad cuz i made the room
        pretty

BARINI_013535

**Author**
Ken Ween (100000174377967)
**Sent** 2019-08-16 19:17:01 UTC
**Body** What u want me do

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:17:22 UTC
**Body** They told me to leve so i haveno id

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:18:08 UTC
**Body** I got gold and eltronics weed t and g for sell

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-16 19:19:42 UTC
**Body** U want to come with me ,u can stay ay my room in midland

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:19:53 UTC
**Body** I meen i got a zip of t letter of g once of weeedi hoding right so un

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:20:54 UTC
**Body** Yea but i need to get money to imbut ok until i pond jewly

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-16 19:22:28 UTC
**Body** So what u want me to do 1st

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:22:44 UTC
**Body** I robbed some deLer in manhatin i am in big shitfor

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:23:00 UTC
**Body** Com get me daddy

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:23:53 UTC
**Body** Pls be bye ur self dont tell noone

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:24:27 UTC
**Body** I am yrusting u

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:29:51 UTC
**Body** 7300 qeens blrd

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-16 19:30:18 UTC
**Body** Can u andwr

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-16 19:41:35 UTC
**Body** Ok

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-16 19:41:42 UTC

BARINI_013536

**Body**
    I got u

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-16 19:43:37 UTC
  **Body** Phold up i migt have a calll

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 19:46:55 UTC
  **Body** On my way

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 20:27:41 UTC
  **Body** You missed a call from Ken.

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 20:27:50 UTC
  **Body** I'm here

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 20:28:31 UTC
  **Body** You missed a call from Ken.

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 20:28:38 UTC
  **Body** You missed a call from Ken.

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 20:29:14 UTC
  **Body** You missed a call from Ken.

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 20:29:26 UTC
  **Body** You missed a video chat with Ken.

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-16 20:30:59 UTC
  **Body** You missed a call from Ken.

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-17 15:11:04 UTC
  **Body** Hey  there howzwork

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-17 17:37:56 UTC
  **Body** A little tired, and exhausted 😩😩😩😩😩

**Author** Ken Ween (100000174377967)
  **Sent** 2019-08-17 17:40:10 UTC
  **Body** How u doin, over there?

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-17 20:42:44 UTC
  **Body** Ok

**Author** Angelina Berlin (100000514661956)
  **Sent** 2019-08-17 20:42:57 UTC
  **Body** I kust
      wol

BARINI_013537

e up

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-17 22:38:56 UTC
**Body** Im on my way back

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 00:44:33 UTC
**Body** Ken called you.

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 01:00:13 UTC
**Body** Ken called you.

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 06:57:49 UTC
**Body** Hi baby, sorry i fell asleep

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 07:08:01 UTC
**Body** You missed a call from Ken.

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 07:13:35 UTC
**Body** You missed a call from Ken.

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 07:14:41 UTC
**Body** You missed a call from Ken.

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 07:14:46 UTC
**Body** Ken: �👍🏻
**Attachments** sticker (369239343222814)
**Type** image/png
**Size** 0
**URL** https://attachment.fbsbx.com/messaging_attach
ment.php?aid=369239343222814&mid=mid.%2
4cAAAAADX4Vaty1NleA1so5QPnEj9m&uid=100
000514661956&accid=100000514661956&prev
iew=0&hash=AQCWxnpx6qJ3PAgWNXXWyJO9O
7AUwS_DRDkeienL6ySrIw



**Photo Id:** 369239343222814

**Author**
    Ken Ween (100000174377967)
**Sent** 2019-08-18 07:21:36 UTC
**Body** You missed a call from Ken.

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 08:47:04 UTC
**Body** Go in bathroom now

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:07:58 UTC
**Body** Ken missed your call.

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:08:09 UTC
**Body** Ken missed your call.

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:09:02 UTC
**Body** Qpls text me aderss his aderss thats on deriverlince

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 09:09:23 UTC
**Body** You missed a video chat with Ken.

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:09:47 UTC
**Body** Text me his aderss

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:09:51 UTC
**Body** Plas

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 09:11:24 UTC
**Body** 344 7th ave apt 2
Brooklyn 11215

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:19:29 UTC
**Body** Dam he told me he was living in74 st

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:19:38 UTC
**Body** How u doing

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:20:03 UTC
**Body** Pls herry we dont have much time

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 09:21:53 UTC
**Body** Walking to pharmacy huy gift cards

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 09:21:59 UTC
**Body** Buy

**Author** Angelina Berlin (100000514661956)

BARINI_013539

**Sent**

2019-08-18 09:22:08 UTC

**Body** Can u bye anthing shampoo condionerand body wash and food for here if uwith car try to get a grunhub uberanct

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:22:22 UTC
**Body** Lov u

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:22:51 UTC
**Body** Pls make fast u can pay taxie with card

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:42:48 UTC
**Body** Yooo wher u at

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-18 09:43:22 UTC
**Body** On the way back

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-18 09:43:41 UTC
**Body** You sent a sticker.
**Attachments** sticker (488524357927676)
     **Type** image/png
      **Size** 0
       **URL** https://attachment.fbsbx.com/messaging_attach
ment.php?aid=488524357927676&mid=mid.%2
4cAAAAADX4Vaty1WGzXVspBxobMYqs&uid=10
0000514661956&accid=100000514661956&pre
view=0&hash=AQDcuiLREz6xhYooSLX2GL4K3jjn
VlY6uLlJ4mBweCK_1A




**Photo Id:** 488524357927676

**Author** Angelina Berlin (100000514661956)

BARINI_013540

**Sent**   2019-08-18 09:53:46 UTC
**Body**   Lherry up pla

**Author**   Angelina Berlin (100000514661956)
**Sent**   2019-08-18 09:54:21 UTC
**Body**   Where arevu

**Author**   Angelina Berlin (100000514661956)
**Sent**   2019-08-18 09:54:41 UTC
**Body**   Yoooo

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:03:12 UTC
**Body**   Walking

**Author**   Angelina Berlin (100000514661956)
**Sent**   2019-08-18 10:05:26 UTC
**Body**   Where u now

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:05:51 UTC
**Body**   By dungan

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:06:03 UTC
**Body**   What u want me to buy

**Author**   Angelina Berlin (100000514661956)
**Sent**   2019-08-18 10:07:34 UTC
**Body**   You called Ken.

**Author**   Angelina Berlin (100000514661956)
**Sent**   2019-08-18 10:09:04 UTC
**Body**   Milk ceril reason brln cold cuts cherder chese
cigsmayonaseshampio comturkey

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:17:34 UTC
**Body**   I'm here deli

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:21:55 UTC
**Body**   Come outside

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:27:55 UTC
**Body**   I left the thing outside on the bag

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:28:28 UTC
**Body**   At the bench white plastic bag

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:31:27 UTC
**Body**   Ken called you.

**Author**   Ken Ween (100000174377967)
**Sent**   2019-08-18 10:41:57 UTC

**Body**
    Card inside cigarette pack on white plastic  bag

**Author** Angelina Berlin (100000514661956)
   **Sent** 2019-08-18 11:24:47 UTC
   **Body** Wow i that u cared i am so hugery wait on u i rember this i need ur
        help pms

**Author** Ken Ween (100000174377967)
   **Sent** 2019-08-18 11:25:49 UTC
   **Body** I'm getting food 4 u

**Author** Angelina Berlin (100000514661956)
   **Sent** 2019-08-18 11:33:13 UTC
   **Body** Pla i need u ado my pussy wet

**Author** Ken Ween (100000174377967)
   **Sent** 2019-08-18 11:35:20 UTC
   **Body** Okay

**Author** Angelina Berlin (100000514661956)
   **Sent** 2019-08-18 11:45:49 UTC
   **Body** I need u to here now stop playing me and get ur ass over here asp
        bring blankits and sheetspls

**Author** Angelina Berlin (100000514661956)
   **Sent** 2019-08-18 11:47:12 UTC
   **Body** I thot i can cont oon u i am fuckin starvei ng u really do t care i
        rember this shit i c how u giveing it up

**Author** Ken Ween (100000174377967)
   **Sent** 2019-08-18 20:14:17 UTC
   **Body** Baby I'm sorry, im here at work, I hope you understand my
        priorities, I'm almost done, I call u later

**Author** Angelina Berlin (100000514661956)
   **Sent** 2019-08-18 22:36:08 UTC
   **Body** Its cool baby i kinda miss u

**Author** Ken Ween (100000174377967)
   **Sent** 2019-08-19 04:20:48 UTC
   **Body** Ken called you.

**Author** Ken Ween (100000174377967)
   **Sent** 2019-08-19 06:46:07 UTC
   **Body** U still need handtruck?

**Author** Ken Ween (100000174377967)
   **Sent** 2019-08-19 07:26:05 UTC
   **Body** Hey boo, u still up?

**Author** Angelina Berlin (100000514661956)
   **Sent** 2019-08-19 13:26:47 UTC
   **Body** Yes

**Author** Angelina Berlin (100000514661956)
   **Sent** 2019-08-19 13:27:45 UTC
   **Body** What happen i no ce u towo days i need 60for room pls help

BARINI_013542

**Author**
Ken Ween (100000174377967)
**Sent** 2019-08-20 05:05:28 UTC
**Body** Ken: 🙂🙂
**Attachments** sticker (369239343222814)
**Type** image/png
**Size** 0
**URL** https://attachment.fbsbx.com/messaging_attach
ment.php?aid=369239343222814&mid=mid.%2
4cAAAAADX4Vaty3q-zd1srWpkrQAgf&uid=1000
00514661956&accid=100000514661956&previ
ew=0&hash=AQCUwmCgrAnZlrvu1guDN3n2-u4
6aL2yVi-sitKbZk8tSQ



**Photo Id:** 369239343222814

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-20 07:56:24 UTC
**Body** Sorry , i have bigger problem need to be solve, take care of urself
always! Lav u baby🙂🙂

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-20 09:34:53 UTC
**Body** I saveled my problm1whats urs

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-20 14:10:33 UTC
**Body** Ken: 🙂🙂
**Attachments** sticker (369239263222822)
**Type** image/png
**Size** 0
**URL** https://attachment.fbsbx.com/messaging_attach
ment.php?aid=369239263222822&mid=mid.%2
4cAAAAADX4Vaty4KK9CVsr11xvrOSC&uid=1000
00514661956&accid=100000514661956&previ
ew=0&hash=AQDllnfQXcGqa-
yo9G2LX4yTDWJGN6KTXt-SAQpT3fcCTQ

BARINI_013543



**Photo Id:** 369239263222822

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-21 02:43:35 UTC
**Body** Hey boo! I miss u!

**Author** Angelina Berlin (100000514661956)
**Sent** 2019-08-21 02:57:40 UTC
**Body** No u dont

**Author** Ken Ween (100000174377967)
**Sent** 2019-08-21 04:51:17 UTC
**Body** Were r u



BARINI_013544