ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP

Attorneys at Law
100 Lafayette Street, Suite 501
New York, NY 10013

| | |
|---|---:|
| Franklin A. Rothman | Tel: (212) 571-5500 |
| Jeremy Schneider | Fax: (212) 571-5507 |
| Robert A. Soloway | |
| David Stern | |
| ———— | |
| Rachel Perillo | |

November 4, 2022

**Via ECF**
Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Leslie Lescano
      <u>19 Cr. 428 (BMC)</u>

Dear Judge Cogan:

  I am the attorney for Leslie Lescano, the defendant in the above-referenced matter. This letter is respectfully submitted in reply to the government's sentencing submission (*see* Government's Sentencing Submission, ECF Doc. 81, hereinafter "Government's Letter" or "GL"), and in response to the Court's Order of October 13, 2022 notifying the defendant of the Court's intention to consider an upward departure or variance from the sentencing Guidelines based upon reasons stated in the government's letter.

  In support of its request for an upward departure, the government's letter inaccurately characterizes Mr. Lescano's offense conduct in an attempt to show that Mr. Lescano agreed with Ms. Barini to drug and rob the victim in this case. But a review of the facts fails to prove Mr. Lescano's knowing participation in Ms. Barini's plan.

  First, the government's reliance on Angelina Barini's post-arrest statement is misleading and should be afforded no weight. The government cites Ms. Barini's statements to law enforcement that she blamed Mr. Lescano for the victim's death, "claiming that the defendant [Mr. Lescano] had given the August 18 Victim 'liquid ecstasy' –i.e. GHB." GL at 4. As the government should concede, her statement was a blatant lie, as Ms. Barini was the one who drugged the victim, just as she did to three other victims prior to August 18. Additionally, Ms. Barini admitted that she helped wrap the victim's body and place it in the garbage can, but there is no evidence whatsoever that the other men who helped her were "associated with the defendant." *Id*. In fact, Ms. Barini repeatedly lied throughout her post-arrest interview, falsely

Hon. Brian M. Cogan
November 4, 2022
Page Two

placing all of the blame on Mr. Lescano in an attempt to absolve herself of any responsibility for the victim's death.  For example, Ms. Barini first told law enforcement that Mr. Lescano was her pimp, that he had raped and tortured her, that he threatened to kill her, that he ordered her to get the hotel room, that Mr. Lescano was a drug dealer who sold "liquid ecstasy", and that he personally sold liquid ecstasy to the victim, all of which, according to the evidence, is untrue.  Accordingly, the government's reliance on Ms. Barini's post-arrest statement should be disregarded for its lack of credibility and relevancy.

Second, the government's insistence that Mr. Lescano was aware of a plan to drug and rob the victim is conclusory and unsupported by the evidence. *See* GL at 8.  A review of the Facebook messenger exchange between Mr. Lescano and Ms. Barini on August 16, 2019 shows otherwise.  At 3:14 p.m. that day, Ms. Barini contacted Mr. Lescano via Facebook messenger and said "I got a bizness opratunady for ya … I cute to the chase then i am willing to pay for ur servces." GL at 12.  Mr. Lescano replies, "Okay." *Id*. She then asks, "Are u with it" and Mr. Lescano replies, "Yes my queen." *Id*. Then Ms. Barini writes: "Cool i am at the metro hotel they got mad cuz I made the room pretty." Mr. Lescano asks "What u want me do[?]" *Id*. at 13.  She replies, "They told me to leve so i haveno id" … "I got gold and eltronics weed t and g for sell."[1] *Id*. Mr. Lescano states, "U want to come with me ,u can stay ay my room in midland." *Id*. Ms. Barini states, "I meen i got a zip of t letter of g once of weeedi hoding right so un"…and "Yea but i need to get money to imbut ok until I pond jewly." *Id*. Mr. Lescano asks, "So what u want me to do 1st [?]" *Id*.  Ms. Barini replies, "I robbed some deLer in manhatin i am in big shitfor" … "Com get me daddy" … "pls be bye ur self don't tell noone" … "I am yrusting u" … "7300 qeens blrd"… "can u andwr" *Id*. Mr. Lescano responds, "Ok" ... "I got u"… "On my way." *Id*. at 14. This conversation concludes at 3:46 p.m.

Subsequent to this conversation, Mr. Lescano rented a motel room for Ms. Barini at the Kamway Lodge using his own name and his own identification. Nothing in the above-communications suggests Mr. Lescano's knowledge of or an agreement to a plan to rob and drug another person, or that he was aware of Ms. Barini's plan to do so. At most, it shows that Barini intentionally misled Mr. Lescano by claiming to be in trouble for robbing a drug dealer (which was a lie) so that she could use him to rent her a room because she did not have the money or means to do it herself. Thus, the only "business opportunity" Mr. Lescano agreed to was to rent a room for Ms. Barini's use, knowing that Barini had possessed GBL and a variety of other drugs either for her own use or to sell to others.

Third, Mr. Lescano's presence in the motel bathroom does not prove his intent or plan to drug the victim with Ms. Barini. *See* GL at 8. Instead, it is reflective of Mr. Lescano once again being misled by Barini so that she could use him in order to facilitate *her* plan. Notably, Ms. Barini and Mr. Lescano previously shared a romantic relationship, and in the early morning of August 18, 2019, Mr. Lescano arrived at the Kamway Lodge hoping to spend time with Ms. Barini.  Shortly after he arrived, Ms. Barini stated that she was going to leave but would return.

---

[1] According to the government, "T" is shorthand for methamphetamine and "G" is shorthand for GBL. *See* GL at 3.

Hon. Brian M. Cogan
November 4, 2022
Page Three

As shown in the Facebook messages, on August 18, 2019 at 4:47 a.m., about an hour and a half after Barini left the room, she texted Mr. Lescano "go in bathroom now." GL at 16. Prior to this moment, Mr. Lescano was not expecting Ms. Barini to return to the motel room with another man, but he hid in the bathroom because at that point, he assumed, but was not certain, that Ms. Barini was returning with a client to engage in prostitution. Mr. Lescano stated in his post-arrest interview that he never observed Ms. Barini give drugs to the victim, but that when he was hiding in the bathroom, he thought it was a possibility that Barini was going to try to make the man fall asleep, since he previously heard she had done that in the past. But Mr. Lescano did not know Barini's plan when he agreed to rent the room for her or when he arrived at the motel that morning.

Moreover, the fact that Mr. Lescano previously heard that Ms. Barini used drugs like GBL to incapacitate and rob men does not mean he knew or should have known it was going to happen in this particular instance. As previously mentioned, GBL was not the only drug that Ms. Barini claimed to have in her possession, as she told Mr. Lescano via Facebook on August 16, 2019 at 3:18 p.m. that she had "gold and eltronics weed t and g for sell", meaning she possessed these drugs, including GBL, *to sell*. *See* GL at 3, 13. Thus, when Mr. Lescano agreed to rent the room, he had no reason to think that Barini's drugs would be used for any other purpose than to sell, or use herself, and because he was not expecting Ms. Barini to bring anyone else back to the hotel room, he certainly did not expect that Ms. Barini intended to drug someone.

Finally, the government concludes from Ms. Barini's message to Mr. Lescano on August 18 at 7:47 a.m. stating "brings blankits and sheetspls", and Mr. Lescano's message to Ms. Barini on August 19 at 2:46 a.m. asking "U still need handtruck" proves that Ms. Barini told Mr. Lescano the victim had died and that Mr. Lescano was trying to help Ms. Barini dispose of the body. *See* GL at 8-9. But the government cherry-picks Barini's statements and portrays them out of context to form a purely speculative conclusion that is unsupported by the evidence. As noted in our sentencing submission, on August 18, 2019 at approximately 7:30 a.m., Ms. Barini sent a flurry of erratic messages to Mr. Lescano after he had left items for her on a bench outside of the motel room. The complete exchange goes as follows:

| | | |
|---|---|---|
| Ms. Barini (7:24 a.m.): | | Wow i that u cared i am so hungery wait on u i remember this i need ur help pms |
| Mr. Lescano (7:25 a.m.): | | I'm getting food 4 u |
| Ms. Barini (7:33 a.m.): | | Pla I need u ado my pussy wet |
| Mr. Lescano (7:35 a.m.): | | Okay |
| Ms. Barini (7:45 a.m.): | | I need u to here now stop playing me and get ur ass over here asp bring blankits and sheetspls |

Hon. Brian M. Cogan
November 4, 2022
Page Four

| | | |
|---|---|---|
| Ms. Barini (7:47 a.m.): | | I thot I can cont oon u i am fuckin starvei ng u really do t care i remember this shit i c how u giving it up |
| Mr. Lescano (4:14 p.m.): | | Baby I'm sorry, im here at work, I hope you understand my priorities, I'm almost done, I call u later |
| Ms. Barini (10:36 p.m.): | | Its cool baby i kinda miss u |

The two have no communication until August 19, 2019 at 12:20 a.m. when Mr. Lescano calls Ms. Barini. At 2:46 a.m., Mr. Lescano texts Ms. Barini, "U still need handtruck?" Ms. Barini does not respond.

The messages the government points to, when viewed in context, fail to show that Mr. Lescano knew or should have known that the victim died or that Ms. Barini needed help disposing of a body. She never stated what the blankets and sheets were for, Mr. Lescano never agreed to bring blankets and sheets, and never brought them to her. At some point Ms. Barini asked Mr. Lescano for a hand-truck, but there is no evidence as to what she specifically asked him or what the hand-truck was for. There is nothing confirming that Mr. Lescano agreed to bring her a hand-truck. When Mr. Lescano asks Ms. Barini if she still needs it, she does not respond. Mr. Lescano never went back to the motel room with a hand-truck, and there was no hand-truck found in the room. Notably, Ms. Barini also reached out to other individuals for assistance and lied about the reason that she needed a hand-truck. For example, on August 19, 2019 at 12:35 a.m. (a few minutes after Barini and Mr. Lescano allegedly spoke on the phone), Barini sent a Facebook message to an unknown individual stating: "Okay I need I need a favor … So I can take care of that I need a hand truck or a dolly my boys took a really expensive statues in the 15th century…So I can return the statue to the owner so my boy doesn't get in trouble just for like 5 or 6 minutes and then get one for me real quick and then I can head over there…It's only a block away when I got to return this thing." *See* Government's Sentencing Submission for Angelina Barini, Exhibit B, ECF Doc. 59-2 at 15. Given that Ms. Barini lied to this individual, it is unreasonable to assume that Ms. Barini told Mr. Lescano that the victim had died simply because she asked him for a hand-truck. GL at 9. Moreover, if in fact Mr. Lescano knew that the victim had died, he would not have continued to communicate with Ms. Barini over the next few days. *See* GL at 19 – 21.

Accordingly, it is respectfully submitted that the facts surrounding Mr. Lescano's offense conduct do not support an upward departure. For these reasons, and those discussed in our sentencing submission, in addition to the arguments to be made at sentencing, the Court should impose a sentence of 20 months' imprisonment.

Hon. Brian M. Cogan
November 4, 2022
Page Five

        The Court's time and attention to this matter is appreciated.

                                                                           Respectfully submitted,
                                                                                     /s/
                                                                       Jeremy Schneider

cc:      Andrew Grubin
          Andrew Wang
          *Assistant United States Attorneys*
          By ECF